IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON TUCKER, DANIEL BARRON, and JEFFREY KRAMER on behalf of themselves and all similarly situated individuals, ) ) ) | Case No. 18 CV 3154 |
| Plaintiffs ) ) | |
| v. ) ) | Judge Lee<br>Magistrate Judge Martin |
| JOHN BALDWIN, in his official capacity as Director of the Illinois Department of Corrections, ) ) ) ) | |
| Defendant. ) | |

**FIRST AMENDED COMPLAINT**

Plaintiffs Jason Tucker, Daniel Barron, and Jeffrey Kramer, individually and on behalf of all similarly situated individuals, through their undersigned counsel, complain against Defendant John Baldwin, Director of the Illinois Department of Corrections, as follows:

**Nature of the Case**

1. This is a civil rights class action brought pursuant to 42 U.S.C. §1983 and filed on behalf of individuals who are under the supervision of the Illinois Department of Corrections ("the Department" or "IDOC"), in which they challenge the constitutionality of the Department's policies restricting parolees' access to computers, the Internet, and any Internet-accessible devices.

2. In particular, Plaintiffs challenge the Department's policy of restricting individuals who are required to register as sex offenders from having

access to the Internet while they are on mandatory supervised release ("MSR") (formerly known as parole).[1]

3. On May 2, 2018, Plaintiffs filed their initial complaint in this matter, challenging the Department's then-existing Internet policy. ECF No. 1. On July 10, 2018, a little over two months after Plaintiffs filed their initial complaint, the Department promulgated a new Internet policy. See Defendant's Combined Memorandum In Support of his Motion to Dismiss and in Opposition to Plaintiffs' Motion for Preliminary Injunction, ECF No. 19, filed 07/10/18. The Department's new written policy mooted Plaintiffs' challenge to the old written policy.

4. This first amended complaint challenges the Department's new Internet policy. Plaintiffs, individually and on behalf of the class they seek to represent, allege that the new Internet policy violates their rights under the First and Fourteenth Amendments of the United States Constitution. Plaintiffs seek class-wide injunctive and declaratory relief.

## Jurisdiction and Venue

5. Jurisdiction is proper in this court pursuant to 28 U.S.C. §§1331 and 1343(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), in that a substantial part of the events giving rise to Plaintiffs' claims occurred in this

---

[1] Illinois stopped using traditional parole in 1978; it was replaced by mandatory supervised release ("MSR"). 730 ILCS 5/5-4.5-15(c). Although MSR serves the same purposes as traditional parole (*e.g.*, facilitating supervised reintegration into society for a former prisoner), MSR differs from traditional parole in one key respect: MSR is a period of community supervision that only begins after the completion of a prison sentence. *Id*. Traditional parole gave some prisoners an opportunity to serve a portion of their prison sentences outside of prison at the discretion of the Prisoner Review Board ("PRB").

district as alleged below.

7. Declaratory relief is authorized under 28 U.S.C. §2201. A declaration of law is necessary and appropriate to determine the respective rights and duties of parties to this action.

## The Parties

8. Defendant John Baldwin is sued in his official capacity as director of the Illinois Department of Corrections. In his capacity as the director of the Department and pursuant to state law, he has final authority to set the Department of Corrections' policies and practices concerning the restrictions placed on parolees on MSR.

9. Plaintiffs Jason Tucker, Daniel Barron and Jeffrey Kramer are individuals on MSR who are required to register as sex offenders and are subject to the challenged policy and practices.

## The Challenged Policy

10. Illinois law gives the Department discretion to decide whether an individual on MSR for a sex offense may have access to the Internet.

11. The Department exercises its discretion pursuant to its written Internet policy, promulgated July 10, 2018, a copy of which is attached hereto as Exhibit 1.

12. Under the terms of the policy, sex offender parolees convicted of "Internet-related sex offenses" are not allowed access to the Internet, and all other sex offender parolees are allowed Internet access "on a case by case basis." In

addition, any sex offender parolee who is granted access to the Internet is subject to several conditions, including a complete prohibition on access to social media and to any website that "focuses primarily on blogs, forum, and/or discussion groups."[2] See Exhibit 1.

    13.    The Department's policy severely and unnecessarily burdens the First Amendment rights of sex offender parolees.

---

[2]    The written policy imposes the following conditions on all parolees who are allowed to have Internet access:

> (1) WILL NOT: Visit, access, download, or use any website, computer program, or application which qualifies as a dating website or dating application; (2) WILL NOT: Visit, access, download, or use any website, computer program, or application in order to share, view, download, upload, or discuss pornographic or sexual material; (3) WILL NOT: Visit, access, download, upload, or use any website which focuses primarily on blogs, forum, and/or discussion groups; (4) WILL NOT: Visit, access, download, upload, or use any website, computer program, or application designed for the specific purpose of anonymizing, masking, spoofing, or otherwise obscuring the user's IP address, browsing history, messages, emails, postings, data uploads, or other similar actions from later investigation or review. This is not intended to apply to automated data encryption protocols involved in data transfer by Internet-capable devices; (5) WILL NOT: Visit, access, download, upload, install or use any scrubbing device on any Internet capable device used by the offender. This includes any website, computer program, or application which is designed to transmit data, including, but not limited to, documents, images, photos, or written messages, and which subsequently deletes the data or transfer history or both as an automated function of the website or application. (6) WILL NOT: Visit, access, download, install or use any applications or direct links to Social Media Web Sites including but not limited to; Facebook, Instagram, Twitter, Snapchat, Tumblr, Black Planet, Café Mom, Buzz Net, Classmates.com, Couchsurfing. (7) WILL NOT: Access the internet without monitoring software installed on an approved desk top or lap top computer. Monitoring software will be purchased at the expense of the Parolee and will only be installed with an IDOC Parole Agent present. IDOC's Department of Parole will receive results of monitoring software. Parolees will provide to IDOC and register all email addresses, profiles, user names and passwords for computers, lap tops and programs associated to the Parolee's internet use.

Exhibit 1.

4

14. The Department's policy of completely prohibiting Internet use by people on parole for offenses "related" to the Internet is overly restrictive and unreasonable especially given that there are readily available alternatives to an absolute prohibition.

15. Since 2007, Illinois law has required anyone convicted of certain sex offenses to "submit to the installation … of one or more hardware or software systems to monitor the Internet use" while on MSR. 730 ILCS 5/3-3-7(a)(7.11)(iii). The installation of such software is an effective and widely-used alternative to guard against parolees' improper use of the Internet.

16. The Department's policy is also overly restrictive with regard to people who have been convicted of offenses "related" to the Internet because it broadly prohibits any and all Internet use rather than imposing a more limited restriction, such as allowing Internet use for employment or school purposes or blocking access to certain websites, but allowing the use of the Internet for purposes such as reading the news, getting directions, searching for employment, paying bills, applying for government services, or communicating with friends and family.

17. The Department's policy of completely prohibiting Internet use by people on MSR for offenses "related" to the Internet is a one-size-fits-all policy that does not take into account the individual characteristics of the parolee.

18. Moreover, the Department's policy is unduly vague and open-ended because it (a) fails to define what constitutes an "Internet-related" offense; (b) fails to set forth objective, workable standards for considering or granting a parolee's

5

request for Internet access, leaving all such decisions to the unconstrained discretion of the Department's Sex Offender Supervision Unit Containment Team[3]; (c) fails to set forth fair and uniform procedures for a parolee to follow to seek Internet access; and (4) fails to set forth a time frame in which a parole agent must consider a parolee's request for Internet access.

19.  The Department's new policy provides no opportunity for a parolee to appeal a decision made by the "Containment Team" or to request review of the decision from a third party who is not directly involved in the parolees' supervision.

20.  At bottom, the Department's broad restriction on parolees' access to the Internet constitutes a serious interference with their First Amendment rights. The prohibition affects Plaintiffs' ability to access news, entertainment, commercial and governmental sources of information and thus interferes with almost all aspects of parolees' lives. As the Supreme Court has recognized, the Internet provides "the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge." *Packingham v. North Carolina*, 137 S.Ct. 1730, 1732 (2017).

21.  Moreover, the Department's policy does not help parolees reintegrate into their communities and live productive and law-abiding lives. To the contrary, the restriction inhibits rehabilitation by cutting off parolees from news, access to information, and the ability to communicate with others.

---

[3]  The "Containment Team" consists of the parole agent, the parole commander, and any therapists involved in the parolee's treatment.

6

22. In addition to the harsh effects the Department's policy has on the First Amendment rights of parolees, it also has substantial collateral effects on parolees' family members' First Amendment rights.

23. This is so because the Department has the responsibility and authority to investigate and approve "host sites" for people released on MSR.

24. Notwithstanding the new policy about Internet access, the Department still prohibits anyone who is required to register as a sex offender from residing while on MSR at a host site where there is Internet access, computers and/or any other device with Internet capability. These policies are set forth in writing in several places:

(1) The Department's Parole School handout, which is distributed to all persons required to register as sex offenders who are preparing a parole plan in anticipation of release on MSR, titled, "Parole Requirements for Offenders with an Active Sex Offender Registry Requirement" provides in relevant part as follows: "[Sex offenders are] [p]rohibited from having internet access of any type through a computer, Web TV, cell phone, personal digital assistant (PDA), or any other device without prior approval by the parole agent. Approval for internet access may only be made for employment and school related activities. Parolee is prohibited from establishing a profile or utilizing someone else's profile on a social-networking website and from contacting or communicating with minors on these sites"; and

(2) The Department's "Sex Offender Supervision Unit Protocols," which is the manual that sets forth the responsibilities of parole agents, provides in relevant part as follows: (a) "Items prohibited in the prospective host site…Computers, routers, internet-related devices " (p. 9); and "[Parolees] are prohibited from accessing any Internet server account without prior approval of your agent."

7

**Facts Pertinent to the Named Plaintiffs**

**Daniel Barron**

25. Plaintiff Daniel Barron, 24, was convicted in May of 2014 of Criminal Sexual Assault for an offense he committed in September 2012.

26. Barron was sentenced to four years in prison at 85 percent and an MSR term of three years to life.

27. Barron's crime had nothing to do with the Internet or computers and did not involve a minor. Barron was 18 years old at the time of his offense, when, during his second month as a freshman at Illinois State University in Normal, Illinois, he over-imbibed and inappropriately touched an adult woman while she was sleeping.

28. Barron was incarcerated at Jacksonville Correctional Center from August 2014 to May 2016 and then Taylorville Correctional Center from May 2016 to December 11, 2017, whereupon he was released to his parents' home, located in Downers Grove, Illinois, to serve out his MSR sentence.

29. Barron currently resides at his parents' home and is currently employed full time at a sandwich shop in Oak Brook, Illinois.

30. The Department's Internet restriction places a severe burden on Barron in several ways, including following:

   (1) Barron's efforts to find new employment are severely hampered due to his inability to look at job listings online;

   (2) Barron is, for all practical purposes, prohibited from visiting friends' and family members' homes, because he is prohibited from going to any residence that has Internet access;

8

(3) Barron is prohibited from taking on-line courses, which he seeks to do, and also from using a computer to write a paper in Microsoft Word; and

(4) Barron is cut off from news, information and entertainment sources that he seeks to use. As a condition of Barron's release to his parents' home, his parents were also required to abide by the Department's Internet restriction in their home. This includes (depending on the whims of the parole officer) not having any personal computers in the home and/or other Internet-enabled devices like a Smart TV.

31. The restriction imposes a huge burden on Barron's parents and other family members who live in the home (including Barron's 26-year-old brother). For example, Barron's mother had to take a day off of work to access and print out relevant information from the Illinois Department of Employment Security for her son concerning "Reentry Illinois," a state program that provides parolees with information to assist them in meeting their parole needs. Such information otherwise would have been unavailable to Barron, who is prohibited from accessing the Internet.

32. Barron's mother is currently unemployed and looking for a job, and due to the fact that no personal computers are allowed in the home, she cannot search for a job from the home using a computer.

**Jason Tucker**

33. Plaintiff Jason Tucker, 40, was convicted of predatory criminal sexual assault of a minor in 2011 for an offense he committed in May of 2009.

34. Tucker was sentenced to seven years in prison at 85 percent, plus an MSR term of three years to life.

35. Tucker's crime had nothing to do with the Internet or with computers.

9

36. On April 20, 2015, Tucker completed his prison sentence and became eligible for release on MSR. But for over two and a half years after that, he was unable to find housing that met the Department of Corrections' approval and thus remained in prison for 31 additional months.

37. Tucker was forced to remain in prison for two and a half years longer than he otherwise would have due to the Department's Internet restriction. In particular, Tucker had sought to live with his mother, but her house in Bunker Hill, Illinois, was denied because of its having Internet access. Tucker's mother was willing to make any accommodations to have her son come live with her, but she was unable to give up access to the Internet because that is the only way she communicates with her other son who lives in New Zealand. As a result, Tucker's mother's house was found to be non-compliant. Tucker's only other option for housing was a house owned by his friend's parents in Alton, Illinois, but this house was also denied due to its having Internet access (as well as having a dog).

38. On November 28, 2017, Tucker was released to an approved host site in Alton, Illinois. Presently, Tucker lives on his own in a single-family home located in Alton, Illinois. He pays rent of $455 per month. Tucker is employed full-time as a laborer at a warehouse in Edwardsville, Illinois.

39. The Department's Internet restriction places a severe burden on Tucker in several ways, including the following:

   (1) Tucker's ability to find a new job is severely restricted because almost all jobs require an individual to fill out a job application on line. He has had to rely on his family and friends to fill out his job applications, which has resulted in inaccuracies on his resume and difficulties communicating

     with potential employers who, generally speaking, seek to correspond with applicants via e-mail;

(2) Tucker's ability to communicate with his family has been severely restricted. In particular, Tucker seeks to communicate via Facetime with his brother who lives in New Zealand and whom Tucker has seen only once in the past nine years. Facetime requires an Internet connection and a camera (which is also prohibited);

(3) Tucker's ability to apply for health insurance via healthcare.gov has been made more time consuming and costly. He was forced to take off a day of work to apply for his health insurance in person at the offices of a registered insurance agent;

(4) Tucker's access to news and entertainment has been greatly restricted. He is unable to afford cable TV and thus his media options are limited to watching movies on DVD and listening to music on an MP3 player. Tucker is unable to learn about news stories that are important to him on news organizations' websites;

(5) Tucker cannot communicate with his lawyers, friends, family, support groups, or government (i.e., IRS, Illinois Department of Employment Security, and Department of Human Services) via email or the Internet;

(6) Tucker's ability to follow the legal developments of certain important litigation related to his status as a registered sex offender is severely limited by his being prevented from downloading court documents from the Internet; and

(7) Tucker cannot download tax forms or manage his finances on line.

**Jeffrey Kramer**

40. Plaintiff Jeffrey Kramer, 35, was convicted of aggravated possession of child pornography in 2013 for an offense he committed in February of 2009. Kramer was sentenced to 24 months of probation.

41. In December of 2015, Kramer's sentence of probation was revoked for violating a condition of his probation (*e.g.*, accessing the Internet and visiting e-Bay and Netflix.) He was then resentenced to 42 months in prison at 50 percent, plus an

MSR term of three years to life.

42. Kramer's crime was connected to the Internet in that he downloaded the relevant images from the Internet onto his computer.

43. On September 27, 2016, Kramer completed his prison sentence and became eligible for release on MSR. But he was unable to find compliant housing and was forced to remain in prison for an additional 16 months. The Department denied at least 15 addresses submitted by Kramer as non-compliant before approving one.

44. On January 29, 2018, Kramer was released from prison to an approved host site, an apartment in Rockford, Illinois, which is where he presently lives. He pays $650 a month for rent. Mr. Kramer is not currently employed and receives social security disability in the amount of $1,200 a month.

45. The Department's Internet restriction place a severe burden on Mr. Kramer in several ways, including the following:

(1) The restriction imposes a serious barrier on Mr. Kramer's ability to stay in touch with his family (all of whom live in Chicago) and friends who live throughout Illinois;

(2) Because he is restricted from using GPS or mapping tools on the Internet, Mr. Kramer is forced to impose upon his family members to assist him in finding the exact addresses of the locations that he is required to identify to his parole officer whenever he seeks to make a request for movement;

(3) The restriction severely limits Mr. Kramer's ability to pursue his two strongest areas of interests — World War II history and movies. This burden is aggravated by the fact that Mr. Kramer is also prohibited from going to the public library to study, read and take out books;

(4) He cannot do any banking or pay bills on-line; and

(5) In terms of receiving appropriate medical care, the restriction interfered with Mr. Kramer's ability to find a heart specialist who takes Medicare after suffering from a recent heart incident.

## CLASS ALLEGATIONS

46. Pursuant to Fed. R. Civ. P. 23(b)(2), the named Plaintiffs seek certification of this complaint as a class action.

47. Plaintiffs Barron and Tucker seek to represent a class defined as follows:

- All people on MSR for sex offenses that are not considered to be "Internet related."

48. Plaintiff Kramer seeks to represent a class defined as follows:

- All people on MSR for sex offenses which the Department of Corrections deems to be "Internet related."

49. Plaintiffs bring this suit on their own behalf and on behalf of all parolees in the custody of the Department who currently are, or in the future will be, subjected to the Department's Internet restriction.

50. The proposed classes are numerous. There are approximately 30,000 individuals currently on parole under the supervision of the Department. A significant percentage of these individuals are subject to sex offender restrictions. The classes would easily consist of thousands of individuals.

51. Joinder of all class members is impracticable. Not only is the class numerous, but membership in the classes is constantly changing and expanding as every day additional people who are required to register as sex offenders become eligible for release on MSR and subject to the challenged restrictions.

13

52. There are questions of law and fact common to all class members, including but not limited to the following:

- The Department's rationales for the challenged policy;

- Whether there is any compelling interest served by the policy;

- Whether the policy is unconstitutional on its face because it gives unconstrained discretion to the Sex Offender Supervision Unit Containment Team to decide whether to restrict a parolee's right to access the Internet;

- Whether the blanket ban on access to the Internet for people whose offenses are deemed to be "Internet related" violates the First Amendment;

- Whether the policy is unconstitutional on its face because it fails to define relevant terms such as "Internet related"; and

- Whether the policy is unconstitutional on its face because it fails to provide any clear process for parolees subject to it to seek Internet access or appeal a determination (*i.e.*, notice, hearing, or appeal); and, if so, how that process works, and what standards or criteria are applied.

53. All individuals falling within the class definitions are subject to the same policy. Given the commonality of the questions pertinent to all class members, a declaratory judgment would provide relief to each member of the class.

54. Plaintiffs and the classes they seek to represent have been directly injured by the policy challenged herein; and members of the classes are currently at risk of future harm from the continuation of this policy.

55. Plaintiffs will fairly and adequately represent the interests of the classes; and the named Plaintiffs' claims are typical of the claims of all members of the proposed classes.

56. Plaintiffs' counsel are experienced in civil rights litigation, including

*Monell* claims, (b)(2) class actions, and constitutional matters on behalf of parolees. Plaintiffs' counsel will fairly and adequately represent the interests of the class.

### COUNT I
### 42 U.S.C. § 1983: VIOLATION OF THE FIRST AMENDMENT

57. Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

58. The Department's policy of severely restricting parolees' access to computers and the internet is overly broad on its face in violation of the First Amendment.

WHERFORE, Plaintiffs respectfully request that this Honorable Court:

(a) issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);
(b) appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);
(c) enter a declaratory judgment that Defendant's policy is unconstitutional both on its face and as applied to Plaintiffs;
(d) enter a preliminary and then permanent injunction prohibiting Defendant from continuing to enforce its unconstitutional policy;
(e) enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and
(f) grant Plaintiffs any other relief the Court deems appropriate.

### COUNT II
### 42 U.S.C. § 1983: VIOLATION OF THE FOURTEENTH AMENDMENT GUARANTEE OF PROCEDURAL DUE PROCESS

59. Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

60. The Department's policy, which, among other things, fails to set forth clear and objective criteria for restricting parolees' Internet access and fails to

provide a process for review or appeal of a decision to restrict Internet access, violates the Fourteenth Amendment guarantee of procedural due process.

WHERFORE, Plaintiffs respectfully request that this Honorable Court:

(a)  issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);
(b)  appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);
(c)  enter a declaratory judgment that Defendant's policy is unconstitutional both on its face and as applied to Plaintiffs;
(d)  enter a preliminary and then permanent injunction prohibiting Defendant from continuing to enforce its unconstitutional policy and requiring the Department to implement adequate procedural safeguards;
(e)  enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and
(f)  grant Plaintiffs any other relief the Court deems appropriate.

**Plaintiffs demand trial by jury.**

    Respectfully submitted,

    /s/ Mark G. Weinberg
    /s/ Adele D. Nicholas
    *Counsel for Plaintiffs*

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
773-283-3913

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
847-361-3869