# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JASON TUCKER, DANIEL BARRON, JEFFREY KRAMER, and JASEN GUSTAFSON, on behalf of themselves and all similarly situated individuals, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 18 C 3154 |
| v. | ) ) | Judge John Z. Lee |
| JOHN BALDWIN, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jason Tucker, Daniel Barron, Jeffrey Kramer, and Jasen Gustafson, individually and on behalf of all similarly situated individuals, brought this lawsuit against Defendant John Baldwin, Director of the Illinois Department of Corrections ("IDOC"), pursuant to 42 U.S.C. § 1983. Plaintiffs allege that IDOC's policy of restricting the access of parolees to the Internet violates their First and Fourteenth Amendment rights. Defendant has filed a motion to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated herein, the motion [39] is denied.

## Background[1]

Plaintiffs are individuals who are required to register as sex offenders and who are currently serving terms of mandatory supervised release ("MSR"), or parole. 2d Am. Compl. ¶¶ 2, 9, ECF No. 64.[2] IDOC has discretion to determine whether an individual on MSR for a sex offense may access the Internet. *Id.* ¶ 10. IDOC exercises this discretion pursuant to a written policy providing that parolees who have committed "Internet-related" offenses cannot access the Internet, while parolees who have not committed such offenses can access the Internet only "on a case by case basis." *Id.* ¶¶ 11–12; *id.*, Ex. 1 ("Policy") at 1, ECF No. 64-1. Parolees who are granted Internet access are subject to certain conditions; for example, they are prohibited from using social media or any website that "focuses primarily on blogs, forum, and/or discussion groups." Policy at 1–2.

According to Plaintiffs, IDOC's policy is "overly restrictive with regard to people who have been convicted of offenses 'related' to the Internet because it broadly prohibits" all Internet use rather than merely imposing usage restrictions. *Id.* ¶¶ 16–17. Plaintiffs allege that the policy is unduly vague because it fails to (1) define "Internet-related offenses," (2) establish standards for granting a parolee Internet

---

[1]    When reviewing a motion to dismiss, the Court assumes the facts alleged in the complaint are true and draws all possible inferences in favor of the plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

[2]    After Defendants filed their motion to dismiss, Plaintiffs filed a second amended complaint, adding Gustafson as a plaintiff and providing some additional factual information. Because the second amended complaint asserts the same claims raised in the first amended complaint, the parties agree that Defendant's motion to dismiss applies with equal force to the second amended complaint.

access, or (3) create procedures for impacted parolees to seek Internet access. *Id.* ¶ 18. Additionally, Plaintiffs state, there is no opportunity for a parolee to appeal or request review of a decision by IDOC's Sex Offender Supervision Unit Containment Team to restrict Internet access. *Id.* ¶ 19. Plaintiffs also allege that an "effective and widely-used alternative to guard against" improper Internet usage exists in the form of hardware or software monitoring systems. *Id.* ¶ 15.

As alleged, IDOC's Internet policy affects the ability of parolees to access news, entertainment, and commercial or governmental information, "thus interfer[ing] with almost all aspects of [their] lives." *Id.* ¶ 20. And, they allege, the policy "inhibits rehabilitation" and interferes with their efforts to reintegrate into their communities. *Id.* ¶ 21.

Furthermore, according to Plaintiffs, IDOC's policy also affects the rights of parolees' family members, because the policy prohibits parolees who are required to register as sex offenders from residing at any location where there is Internet access or any Internet-capable device. *Id.* ¶¶ 22–24.

## I.      Daniel Barron

Barron was convicted of criminal sexual assault in May 2014. *Id.* ¶ 25. His crime did not involve use of the Internet. *Id.* ¶ 27. He was released from prison in December 2017 and now resides with his parents. *Id.* ¶ 29. According to Plaintiffs, IDOC's policy interferes with Barron's ability to search for a new job (because he cannot view listings online) and affects his ability to visit friends and family (because he cannot visit a residence that has Internet access). *Id.* ¶ 30. Furthermore, Barron

cannot take online classes, and he is "cut off" from news and entertainment sources. *Id.* In addition, Barron's family cannot have personal computers or other Internet-capable devices in their home, which places a "huge burden" on them. *Id.* ¶¶ 30–32.

## II. Jason Tucker

Tucker was convicted of predatory criminal sexual assault of a minor in 2011. *Id.* ¶ 33. His crime did not involve use of the Internet. *Id.* ¶ 35. Tucker became eligible for release on MSR in April 2015; however, he "was unable to find housing that met [IDOC's] approval," and therefore remained in prison for an additional thirty-one months. *Id.* ¶¶ 36–37. He was eventually released in November 2017. *Id.* ¶ 38.

According to Plaintiffs, IDOC's policy "severely restrict[s]" Tucker's ability to find a new job, because many applications are completed online. *Id.* ¶ 39. It also has made it more difficult for him to obtain health insurance and manage his finances. *Id.* Because of the policy, Tucker cannot access news or entertainment sources, or communicate with his attorneys, friends, and family, including his brother, who lives abroad. *Id.*

## III. Jeffrey Kramer

Kramer was convicted of aggravated possession of child pornography in 2013. *Id.* ¶ 40. He downloaded images onto his computer from the Internet. *Id.* ¶ 42. He was originally sentenced to probation, but his probation was revoked for accessing the Internet. *Id.* ¶ 41. He was resentenced and became eligible for release on MSR in September 2016. *Id.* ¶ 43. Because he was unable to find compliant housing, he

was "forced to remain in prison for an additional 16 months." *Id.* He was eventually released in January 2018. *Id.* ¶ 44.

IDOC's policy, Plaintiffs assert, "impose[d] a serious barrier" on Kramer's ability to communicate with friends and family. *Id.* ¶ 45. It also affected his ability to pursue his hobbies, because he was prohibited from visiting the library. *Id.* Moreover, the policy prohibited Kramer from paying bills or banking online, and made it difficult for him to find a medical provider. *Id.*

Kramer was arrested in September 2018 after his parole officer discovered a cell phone in his possession. *Id.* ¶ 46. He is now serving an additional two-year sentence. *Id.* ¶ 47.

## IV.    Jasen Gustafson

Gustafson was convicted of aggravated possession of child pornography in 2013. *Id.* ¶ 48. He too downloaded images from the Internet. *Id.* ¶ 50. Gustafson was approved for release on MSR in October 2014, but he was not released from prison until February 2019 because he could not find housing that met IDOC's requirements. *Id.* ¶ 51.

According to the complaint, IDOC's policy has "severely restricted" Gustafson's ability to find a job, because many applications are completed online. *Id.* ¶ 53. Furthermore, Gustafson's ability to communicate with his family, friends, and attorneys has been "severely diminished." *Id.* And, Plaintiffs state, Gustafson cannot access news and entertainment that interests him. *Id.*

## V.     Proposed Classes

Barron and Tucker seek to represent a class of "[a]ll people on MSR for sex offenses that are not considered to be 'Internet related,'" while Gustafson and Kramer seek to represent a class of "[a]ll people on MSR for sex offenses which [IDOC] deems to be 'Internet related.'" *Id.* ¶¶ 55–56.

## Legal Standards

### I.     Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. "When ruling on a motion to dismiss for lack of subject matter jurisdiction under [Rule] 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)).

### II.     Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6

Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

In Count I, Plaintiffs bring a § 1983 claim, alleging that IDOC's policy violates their First Amendment rights. In Count II, Plaintiffs bring a § 1983 claim, alleging that IDOC's policy violates their procedural due process rights under the Fourteenth Amendment. Defendant seeks dismissal of both claims.

## I. First Amendment Claim (Count I)

### A. Whether Plaintiffs' Claim is Cognizable Under § 1983

Defendant contends that the Court lacks subject matter jurisdiction over Plaintiffs' First Amendment claim because "[a] direct challenge to a parole condition . . . challenges an aspect of the offender's sentence," and therefore "can only be brought in a *habeas corpus* proceeding, not a [§ 1983] case." Def.'s Mem. Supp. Mot. Dismiss at 5, ECF No. 40.

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for *habeas corpus*, 28 U.S.C. § 2254, and a complaint under . . . 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). The only avenue open to state prisoners who "seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody," is *habeas corpus*. *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005).

Accordingly, if a judgment in the plaintiff's favor would "necessarily imply the invalidity of [his] conviction or sentence," the plaintiff must bring that claim in a *habeas* petition. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). By contrast, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment" against him, the plaintiff may bring the claim under § 1983. *Id.* The Seventh Circuit, however, has cautioned that the "exception to § 1983 jurisdiction" for claims covered by the federal *habeas* statute is "narrow." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). This is because *habeas* is the exclusive avenue of relief only where a plaintiff's claim "seeks," rather than "simply relates to," "core *habeas corpus* relief, *i.e.,* where a state prisoner requests present or future release." *Wilkinson*, 544 U.S. at 81.

While the rules are straightforward in the case of an incarcerated plaintiff, the inquiry is more complicated when the plaintiff is on parole, because the "distinction between the fact of confinement and the conditions thereof is necessarily blurred."

*Drollinger v. Milligan*, 552 F.2d 1220, 1225 (7th Cir. 1977); *see also Williams v. Wisconsin*, 336 F.3d 576, 579–80 (7th Cir. 2003) ("For parolees, the question [of whether a claim should be brought under § 1983 or the *habeas* statute] is more metaphysical, because the 'conditions' of parole *are* the confinement."). In the end, if a plaintiff is "seeking release from the conditions of" parole or probation "imposed on him by the courts," the "appropriate vehicle for seeking relief" is a *habeas* petition, rather than a lawsuit under § 1983. *Tobey v. Chibucos*, 890 F.3d 634, 651 (7th Cir. 2018).

Applying these principles here, the Court concludes that Plaintiffs' First Amendment claim does not challenge their sentences. There is no court-ordered restriction on Plaintiffs' Internet access, and while Illinois law permits the Prisoner Review Board ("PRB") to impose certain conditions on parolees—for example, that they may not use the Internet without the prior approval of IDOC, 730 Ill. Comp. Stat. 5/3-3-7(a)(7.6)(i)—Plaintiffs are not contesting the imposition of the condition itself, but the way that IDOC is implementing it.

The recent decision in *Frazier v. Baldwin*, No. 18 C 1991, 2019 WL 296556 (N.D. Ill. Jan. 23, 2019), is instructive. In that case, a group of mothers serving terms of MSR following their convictions for sex offenses challenged IDOC's policy prohibiting them from having contact with their minor children. *Id.* at \*1. Illinois law provides that sex offenders must refrain from all contact with minor children while on MSR, without prior approval by IDOC, and the PRB imposed a virtually identically worded condition of MSR. *Id.*

To implement the condition, IDOC adopted a policy that categorically prohibited all persons subject to the condition from contacting their minor children for the first six months of MSR. *Id.* Based on that policy, the plaintiffs brought a substantive due process claim. *Id.* And IDOC moved to dismiss, arguing that the claim must be brought in a *habeas* petition, rather than a § 1983 suit. *Id.* at *2.

In a well-reasoned opinion, the court in *Frazier* rejected IDOC's argument, observing that the plaintiffs' claim was not a challenge to the condition itself, but rather, "a challenge to one way of *implementing*" the condition. *Id.* at *4 (emphasis in original). As a result, the claim "[did] not suggest that the condition *itself*, or any other aspect of [the p]laintiffs' convictions or sentences, [was] unlawful." *Id.*

The analysis by the court in *Frazier* is persuasive. In this case, as in *Frazier*, Plaintiffs do not challenge the condition requiring them to obtain approval by IDOC before accessing the Internet; rather, they take issue with the way this condition is being implemented by IDOC. Because a victory for Plaintiffs would not invalidate any part of their sentences, but would only change the manner in which IDOC implements the restriction on parolees' Internet use, Plaintiffs' First Amendment claim correctly falls under § 1983.

For his part, Defendant argues that Plaintiffs' claim must be brought in a *habeas* petition because "[i]t makes no difference whether [the] restriction on freedom was performed by a judge or the [PRB] in a non-discretionary manner or by [IDOC] in a discretionary manner." Def.'s Reply at 4, ECF No. 70. In support, Defendant cites to *Huber v. Anderson*, 909 F.3d 201 (7th Cir. 2018), but his reliance on *Huber* is

misplaced. There, the plaintiff brought claims under § 1983 because he had been held in custody incorrectly for nearly ten years. In discussing why the statute of limitations did not bar his § 1983 claims, the Seventh Circuit explained that, even though Huber's detention was caused by various administrative errors, so long as he remained in prison, he could only have sought relief by means of a *habeas* claim. *Id.* But the *Huber* case sheds little light here, where Plaintiffs are not challenging the imposition of the MSR condition, but its implementation by IDOC.

## B. Merits of Plaintiffs' Claim

Defendant also argues that Plaintiffs' First Amendment claim fails on the merits. Under *Turner v. Safley*, 482 U.S. 78 (1987), a restriction on an inmate's constitutional rights is valid so long as it is "reasonably related to legitimate penological interests." *Id.* at 89. Courts are to consider four factors in determining the reasonableness of the regulation at issue: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the right that remain open to prison inmates"; (3) the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives" to the regulation. *Id.* at 89–90. This test applies with equal force to parole conditions. *Felce v. Fiedler*, 974 F.2d 1484, 1494 (7th Cir. 1992).

Addressing these factors, Defendant argues that (1) the policy of "barring sex offenders on MSR who were convicted of Internet-related crimes" from using the

11

Internet "has a rational relationship to the IDOC's interest in protecting children from sexual abuse"; (2) "the Internet is not the only avenue for sex offenders on MSR to exercise their First Amendment rights"; (3) "permitting sex offenders with Internet-related [convictions] to access the Internet would have an adverse effect on the IDOC"; and (4) "there is no obvious, easy alternative to the Internet restriction that would satisfy the IDOC's safety and security concerns." Def.'s Mem. Supp. Mot. Dismiss at 9–11 (internal quotation marks omitted). Furthermore, as to sex offenders on MSR who have not been convicted of Internet-related crimes, Defendant contends that state law does not allow IDOC to grant those offenders access to social media and networking websites.

But Plaintiffs correctly point out that these arguments largely depend upon affirmative factual assertions made by Defendant. Citing the Seventh Circuit's recent decision in *Lashbrook v. Hyatte*, 758 F. App'x 539 (7th Cir. 2019), Plaintiffs argue that at this stage, it would be "premature . . . to make a merits-based determination of the constitutionality of a policy that affects constitutional rights under the four-part test set forth in *Turner*." Pl.'s Resp. Opp. Mot. Dismiss at 11, ECF No. 50. In *Lashbrook*, the Court of Appeals determined that dismissal of the plaintiff's claim pursuant to *Turner* was premature: "At the outset[,] we note that the application of the *Turner* factors may require defendants to produce evidence that justifies the policies. . . . But at this prediscovery stage, there is no evidentiary record from which the judge could evaluate the prison's resource concerns, the impact on

prison staff . . . , or the viability of other means of [the plaintiff exercising his rights]."  *Id.* at 542.  Plaintiffs contend the same is true here.

Defendant acknowledges that discovery may be required in some cases before the Court can properly apply the *Turner* test, but he argues that it is not necessary here, because under the all-important first factor, the Internet policy is "obvious[ly]" related to "IDOC's critical interest in protecting children from abuse."  Def.'s Reply at 9.  And Defendant is correct that the first factor is the most important one.  *See Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010) (noting that the first factor "can act as a threshold factor regardless which way it cuts"); *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) (stating that where there is "only minimal evidence suggesting that a prison's regulation is irrational, running through each factor at length is unnecessary").  But the other factors are still relevant, and the Court "must" consider them—which, in this case, would require additional discovery.  *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004).

What is more, even the cases cited by Defendant addressed the *Turner* test at the summary judgment stage.  *See Singer*, 593 F.3d at 531; *Mays*, 575 F.3d at 645. This is not to say, of course, that a court could never proceed with a *Turner* analysis at the pleading stage.  But this can be done only where the court could "readily discern the validity and rationality of the connection between" the purported penological purpose and the challenged restriction.  *See Munson v. Gaetz*, 673 F.3d 630, 634 (7th Cir. 2012).  This case is not so clear-cut.  Given the allegations of Plaintiffs' complaint and the lack of an evidentiary record, the dismissal of Plaintiffs' First Amendment

claim would be premature at this stage. Accordingly, Defendant's motion to dismiss is denied as to Count I.

## II.    Procedural Due Process Claim (Count II)

Turning to Plaintiffs' procedural due process claim, Defendant contends that (1) the claim is not ripe; and (2) IDOC provides parolees with sufficient process to challenge decisions regarding Internet access.

### A.    Ripeness

Defendant first argues that the procedural due process claim is not ripe because Plaintiffs have not alleged that they have requested Internet access and been denied. In response, Plaintiffs provide declarations to that effect from Tucker and Barron. Pls.' Resp. Opp. Mot. Dismiss, Ex. 1 ("Tucker Decl."), ECF No. 50-1; *id.*, Ex. 2 ("Barron Decl."), ECF No. 50-2. With that, Defendant now concedes that the claim is ripe.

### B.    Sufficiency of Process

Nevertheless, Defendant maintains that Plaintiffs have failed to state a procedural due process claim because "the decision as to whether to grant Internet access is not made by the parole agent acting alone, but by the Sex Offender Supervision Unit Containment Team, which includes the parole agent, the parole commander, any therapists working with the parolee, and the Sex Offender Services Coordinator or Deputy Chief." As Defendant sees it, "[t]his consensus approach to decision-making lessens the chance of an ill-considered decision." Defs.' Mem. Supp. Mot. Dismiss at 15. Furthermore, Defendant argues, due process is provided because

parolees who are denied Internet access can file a grievance with IDOC.  According to Defendant, "Plaintiffs have not even tried to file such a grievance." *Id.*

Plaintiffs take issue with this process, however, because the grievance must be filed with the parole commander—one of the initial decisionmakers.  Thus, they contend, there is "no independent review of the decision to restrict Internet access." Pl.'s Resp. Opp. Mot. Dismiss at 18 (citing 20 Ill. Admin. Code 504, Subpart G, § 504.920).  It "falls short of the minimum dictates of due process to force someone to appeal to the same person who rendered the initial decision." *Id.* at 19.  Defendant, for his part, points out that § 504.940 allows a parolee who is not satisfied with the decision on his grievance to appeal to the director of the IDOC, who must then provide a written response within six months.  Def.'s Reply at 10.

The Court does not believe it is appropriate to dismiss Plaintiffs' procedural due process claim for two reasons.  First, the Court cannot conclude on this sparse record that the process for challenging the IDOC's decision to deny a parolee Internet access of any kind is sufficient.  Plaintiffs allege that there are various problems with IDOC's procedures, such as the fact that there is no set time frame in which a parole agent must consider a parolee's request for Internet access, and that the procedures for seeking access are unclear and not uniformly applied.  2d. Am. Compl. ¶ 18. Additionally, there are factual disputes as to what factors the IDOC considers when deciding to prohibit Internet access in the first place.

What is more, the Court notes that Plaintiffs suggest that their procedural due process claim also may be based on the lack of pre-deprivation procedures available

15

to parolees.  But Defendant's arguments do not address the adequacy of the pre-deprivation procedures available to Plaintiffs before the IDOC.  Accordingly, the Court declines to dismiss Count II at this nascent stage.

## Conclusion

For the reasons stated herein, Defendant's motion to dismiss [39] is denied.

**IT IS SO ORDERED.**                    **ENTERED:  September 17, 2019**


**JOHN Z. LEE**
**United States District Judge**