IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON TUCKER, DANIEL BARRON, JEFFREY KRAMER, JASEN GUSTAFSON, and MARSHALL HAMPTON, on behalf of themselves and all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ROB JEFFREYS, in his official capacity as Director of the Illinois Department of Corrections, and DION DIXON, in his individual capacity as Deputy Chief of the Parole Division of the Illinois Department of Corrections,<br><br>Defendants. | No. 18 C 3154<br><br>Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jason Tucker, Daniel Barron, Jeffrey Kramer, Jasen Gustafson, and Marshall Hampton were convicted of various sex offenses, served their custodial sentence, and are now on parole or reimprisoned for violating parole. As a condition of parole, the Illinois Department of Corrections ("IDOC") has restricted their access to the internet pursuant to its internet use policy. Plaintiffs bring this action under 42 U.S.C. § 1983, asserting that IDOC's policy violates several of their constitutionally protected rights. Before the Court is Defendants' motion to dismiss Plaintiffs' third amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

I. **Background**[1]

The Court presumes familiarity with its prior opinion in this case. *See* 9/17/19 Mem. Op. and Order, ECF No. 93. In short, Plaintiffs were convicted for committing sex offenses as defined by Illinois's Sex Offender Registration Act. *Id.* at 2; *see* 3d Am. Compl. ¶¶ 10–11, ECF No. 140. Most are serving terms of mandatory supervised release, *i.e.*, parole; one is serving an additional custodial sentence for violating conditions of parole. On behalf of themselves and others similarly situated, they challenge a written policy of IDOC that restricts the ability of parolees in the Sex Offender Supervision Unit to access the internet. *Id.* ¶¶ 1–2, 78; *see id.*, Ex. A, IDOC Sex Offender Internet Use Policy ("Internet Use Policy"), ECF No. 140-1.

The current version of the Internet Use Policy:

- Prohibits parolees whose sex offenses "involved the use of an Internet-capable device" from using or accessing any such device without express permission;

- Even when parolees are granted permission, only allows such parolees to access the internet for counseling, education, religion, and employment-related purposes;

- Gives parole agents broad discretion over the ability of parolees, whose offenses did not involve the use of an internet-capable device, to access the internet;

- Allows parole agents to withhold internet access for parolees who cannot afford to pay for costly internet monitoring software, sex offender therapy, or polygraph examinations; and

- Allows parole agents to undertake wide-ranging searches of all data found on any internet-capable devices possessed by parolees, including emails and text messages, without any showing of cause.

---

[1] The following well-pleaded factual allegations are accepted as true for purposes of the motion to dismiss.

2

3d Am. Compl. ¶ 14.

The policy has been revised several times during the pendency of this action. *Id.* ¶ 19. And Plaintiffs challenge prior versions of the policy as well, including one that imposed a complete ban on internet access for all parolees convicted of a qualifying sex offense. *Id.* ¶¶ 19–20.

Tucker and Barron filed this action against IDOC's then Director, John Baldwin, on May 2, 2018. *See* Compl., ECF No. 1. Baldwin's first two motions to dismiss were mooted by amended complaints, the second of which included Kramer and Gustafson and asserted two counts pursuant to 42 U.S.C. § 1983: violation of Plaintiffs' First Amendment rights (Count I), and violation of their Fourteenth Amendment procedural due process rights (Count II). *See* 2d Am. Compl. ¶¶ 65–68, ECF No. 64. On September 17, 2019, the Court denied Baldwin's motion to dismiss the second amended complaint, for reasons discussed below to the extent relevant here. *See generally* 9/17/19 Mem. Op. and Order.

Plaintiffs moved to file a third amended complaint on March 17, 2020, citing the current version of the Internet Use Policy described above, effective March 1, 2020; the Court granted the motion. *See* 3/17/20 Tr. at 5:22–7:9, ECF No. 131. This complaint introduces various changes. First, it substitutes Baldwin for IDOC's current Director, Rob Jeffreys. *See* 3d Am. Compl. ¶ 8. Second, it adds Dion Dixon, IDOC's Deputy Chief of the Parole Division and the alleged primary drafter of IDOC's internet policies, as another defendant. *Id.* ¶ 9. Third, it adds Hampton as an additional Plaintiff. *Id.* ¶ 10. Fourth, it asserts two additional § 1983 claims:

3

violation of the Equal Protection Clause of the Fourteenth Amendment (Count III), and violation of the Fourth Amendment (Count IV). *Id.* ¶¶ 88–89.

Defendants have moved to dismiss the third amended complaint under Rule 12(b)(6). *See* Defs.' Mot. Dismiss, ECF No. 147.[2]

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

When considering a motion to dismiss, courts accept "all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

---

[2] Additionally, Defendants move to dismiss the third amended complaint as moot under Rule 12(b)(1) to the extent it is based on IDOC's prior internet policies. As Plaintiffs point out in their response brief, however, a defendant's change in conduct does not moot a claim for damages based on past conduct. *See Holder v. Ill. Dep't of Corr.*, 751 F.3d 486, 498 (7th Cir. 2014). Tacitly acknowledging as much, Defendants fail to address this issue in their reply brief. Thus, Defendants' request for dismissal under Rule 12(b)(1) is denied.

4

### III. <u>Analysis</u>

Defendants raise a variety of arguments for dismissing the third amended complaint. The Court addresses each argument in turn.

### A. **Whether Counts I and IV Are Cognizable Under § 1983**

Reprising an argument from Baldwin's motion to dismiss the second amended complaint, Defendants initially contend that Plaintiffs' First and Fourth Amendment claims must be brought in a *habeas corpus* proceeding, not a § 1983 action. *Cf. Tobey v. Chibucos*, 890 F.3d 634, 651 (7th Cir. 2018) ("If Tobey is seeking release from the conditions of probation imposed on him by the courts, a petition for a writ of *habeas corpus* is the appropriate vehicle for seeking relief, not a lawsuit for damages under section 1983." (citing *Williams v. Wisconsin*, 336 F.3d 576, 579–80 (7th Cir. 2003))).[3]

In Defendants' view, these claims ultimately seek release from conditions imposed by 730 Ill. Comp. Stat. Ann. 5/3-3-7(b)(7.6). This provision authorizes the Prison Review Board to require that parolees, who were convicted of a sex offense (as defined by the Sex Offender Registration Act) that was committed on or after June 1, 2009:

> (i) not access or use a computer or any other device with Internet capability without the prior written approval of [IDOC];
>
> (ii) submit to periodic unannounced examinations of the offender's computer or any other device with Internet capability by the offender's supervising agent, a law enforcement officer, or assigned computer or information technology specialist, including the retrieval and copying

---

[3] Defendants raise this argument as to Count III as well. Because the Court finds that Count III fails to state a violation of the Equal Protection Clause, as discussed below, it need not address that count here.

>of all data from the computer or device and any internal or external peripherals and removal of such information, equipment, or device to conduct a more thorough inspection;
>
>(iii) submit to the installation on the offender's computer or device with Internet capability, at the offender's expense, of one or more hardware or software systems to monitor the Internet use; and
>
>(iv) submit to any other appropriate restrictions concerning the offender's use of or access to a computer or any other device with Internet capability imposed by the Board, the Department or the offender's supervising agent[.]

730 Ill. Comp. Stat. Ann. 5/3-3-7(b)(7.6).

The Court rejects this argument for much the same reasons it did previously. *See* 9/17/19 Mem. Op. and Order at 7–11. Contrary to Defendants' view, Plaintiffs still do not challenge the validity of the conditions permitted under subsection 5/3-3-7(b)(7.6), but rather an internal policy "governing how IDOC officials implement" those statutorily allowed conditions. *See Frazier v. Baldwin*, No. 18 C 1991, 2019 WL 296556, at *3 (N.D. Ill. Jan. 23, 2019) (drawing a similar distinction).

In conflating IDOC's policy with subsection 5/3-3-7(b)(7.6), Defendants ignore that this provision gives discretion to "the *Prison Review Board*—not IDOC." *See id.* On this basis alone, Plaintiffs would seem free to challenge the Internet Use Policy without touching the conditions allowed by that statute.[4]

---

[4] It is likely for this reason that the policy does not cite section 5/3-3-7 as its underlying authority, but instead cites section 5/3-2-2, which describes IDOC's own "powers, duties, and responsibilities." *See* 730 Ill. Comp. Stat. 5/3-2-2(1); Internet Use Policy at 1.

6

Defendants also overlook the ways in which the Internet Use Policy allegedly imposes greater restrictions than those permitted under subsection 5/3-3-7(b)(7.6). For instance, the statutory conditions apply only to offenders who committed their offense on or after June 1, 2009, whereas the policy applies to "all" sex offenders, including those like Tucker and Kramer, who committed their offenses before June 1, 2009. *See* 3d Am. Compl. ¶¶ 35, 44; Internet Use Policy at 4–5. Furthermore, with regard to Plaintiffs' First Amendment claim, the policy does more than simply require the prior written approval contemplated under subsection 5/3-3-7(b)(7.6)(i); it prohibits certain sex offenders from accessing the internet for purposes unrelated to counseling, education, religion, or employment, while giving parole agents broad discretion to restrict the internet access of all other sex offenders. *See* 3d Am. Compl. ¶ 14. This is not to mention prior versions of the policy that Plaintiffs challenge, including one that imposed a total ban on internet access. *See id.* ¶ 19–20.

Thus, because the conditions allowed under subsection 5/3-3-7(b)(7.6) "will continue to apply, and IDOC will continue to implement [them], so long as it does so in a constitutional manner," in the event that Plaintiffs prevail on Counts I or IV, these claims are not barred by the "narrow" exception to § 1983 jurisdiction on which Defendants rely. *See Frazier*, 2019 WL 296556, at *2–3. Defendants' motion to dismiss on this basis is denied.

### B.     Whether Count II States a Procedural Due Process Claim

Reprising another argument that the Court previously rejected, Defendants contend that Plaintiffs fail to state a procedural due process claim in Count II.

7

Procedural due process requires two things before the government may deprive someone of a liberty interest: "notice of the potential deprivation . . . and a meaningful opportunity to be heard." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 600 (7th Cir. 2016). As before, Defendants insist that IDOC provides an adequate opportunity to be heard under the balancing test of *Mathews v. Eldridge*, 424 U.S 319 (1976), which is the only prong that Plaintiffs appear to challenge.

Given the fact-intensive nature of this analysis, the Court continues to believe that dismissal of the procedural due process claim is inappropriate at this early stage. *See* 9/17/19 Mem. Op. and Order at 15–16. Much as in their second amended complaint, Plaintiffs allege that the Internet Use Policy fosters arbitrary deprivations by leaving many decisions about parolees' ability to access the internet "to the unconstrained and unfettered discretion of the [parole] agent and the 'Containment Team'"; by failing to set forth objective criteria to govern such discretion; by failing to set forth a time frame in which any such decision on a parolees' ability to access the internet must be made, resulting in years-long delays; and by excluding any neutral decisionmaker from the process. 3d Am. Compl. ¶¶ 16, 81. Taking these allegations as true, the Court cannot conclude as a matter of law that IDOC's process for seeking internet access is constitutionally adequate. *See* 9/17/19 Mem. Op. and Order at 15.

**C.      Whether Count III States an Equal Protection Clause Claim**

Defendants also argue that Plaintiffs' newly added Count III fails to state an Equal Protection Clause claim. In their response brief, Plaintiffs clarify that this claim is based on Hampton's inability to pay for the internet-monitoring software, sex

8

offender therapy, and polygraph examinations on which his internet access may be conditioned under the Internet Use Policy. Plaintiffs contend that this indigency-based discrimination subjects the policy to heightened scrutiny under "a long line of Supreme Court precedent usually associated with *Bearden v. Georgia*, 461 U.S. 660 (1983)." Pls.' Resp. Opp'n Mot. Dismiss ("Pls.' Resp.") at 13, ECF No. 151.

"While a prisoner's indigence does not generally call for equal protection analysis, the Supreme Court has at least twice invalidated facially neutral criminal laws that authorized the detention of poor individuals because of their indigence." *Murphy v. Raoul*, 380 F. Supp. 3d 731, 755 (N.D. Ill. 2019) (citing *Tate v. Short*, 401 U.S. 395, 397–99 (1971); *Williams v. Illinois*, 399 U.S. 235, 241–42 (1970)). *Tate* and *Williams* were each reviewed in *Bearden*, all three of which involved "similar situations." 461 U.S. at 667. In particular, each of these cases involved a defendant who had been imprisoned (in *Bearden*, after revocation of parole) due to his inability to pay a fine authorized by the statute of conviction. *See id.* at 662–63; *Tate*, 401 U.S. at 397; *Williams*, 399 U.S. at 236–37. *Bearden* synthesized the rule for which these cases stand as providing that "the State cannot impose a fine as a sentence and then automatically convert it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." 461 U.S. at 667 (cleaned up).

Contrary to Plaintiffs' suggestion, however, "[t]he Supreme Court has never extended *Bearden* beyond the context of poverty-based *imprisonment*." *Jones v. Governor of Fla.*, 975 F.3d 1016, 1032 (11th Cir. 2020). And indeed, Plaintiffs point to no authority supporting their contention that heightened scrutiny applies

9

wherever "fundamental rights . . . are made contingent on one's ability to pay." *See* Pls.' Resp. at 13.[5]

That leaves deferential rational basis review, and Plaintiffs do not contend that IDOC's policy of allowing parole agents to condition their internet access on such expenses as internet-monitoring software, sex-offender therapy, or lie-detector tests fails to "bear[] a rational relation to legitimate penal interests." *See Murphy*, 380 F. Supp. 3d at 754 (quoting *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988)).

Accordingly, Defendants' motion to dismiss is granted as to Count III.

**D.      Whether Count IV States a Fourth Amendment Claim**

As to Plaintiffs' other new claim, Defendants contend that it fails to state a violation of the Fourth Amendment's prohibition against unreasonable searches. In so doing, Defendants argue that parolees generally have the least expectation of privacy of anyone (other than prisoners), while, on the other hand, the government "has an overwhelming interest in tight supervision of parolees to reduce recidivism and promote reintegration into a law-abiding society." *United States v. Caya*, 956 F.3d 498, 503 (7th Cir. 2020).

Defendants add that, under section 5/3-3-7, parolees who committed a sex offense on or after June 1, 2009, must be prepared to "submit to periodic unannounced examinations of [their] computer or any other device with Internet capability by

---

[5]   To the extent Plaintiffs had in mind the Supreme Court's decision in *San Antonio Independent School District v. Rodriguez*, which recognized that strict scrutiny applies when individuals have "sustained an absolute deprivation" of a constitutional right "because of their impecunity," *see* 411 U.S. 1, 20 (1973), Plaintiffs have not alleged an "absolute deprivation" of Hampton's First Amendment free speech rights, but rather only of his right to access the internet.

10

[their] supervising agent, . . . including the retrieval and copying of all data from the computer or device and any internal or external peripherals," and to install "one or more hardware or software systems to monitor the Internet use" on their computer or other internet-capable device. 730 Ill. Comp. Stat. Ann. 5/3-3-7(b)(7.6)(ii)–(iii). And the Supreme Court has twice held that a parolee who is subject to "a clear and unambiguous" condition requiring him or her to "submit to suspicionless searches by a parole officer" at any time effectively has no reasonable expectation of privacy. *See Samson v. California*, 547 U.S. 843, 850–52 (2006); *United States v. Knights*, 534 U.S. 112, 116, 119–20 (2001). Furthermore, lower courts have maintained this view with respect to searches of digital data even after *Riley v. California*, 573 U.S. 373 (2014), where the Supreme Court recognized heightened protection for similar personal in the search-incident-to-arrest context. *See United States v. Wood*, 426 F. Supp. 3d 560, 566–67 (N.D. Ind. 2019) (collecting cases); *United States v. Collier*, 932 F.3d 1067, 1073–74 (8th Cir. 2019) (parolee "did not have a reasonable expectation of privacy" in cell phone data given condition of release requiring him to "submit at any time to an unannounced . . . search" of his belongings); *United States v. Fisher*, 140 F. App'x 792, 794 (10th Cir. 2005) ("Defendant did not have an objectively reasonable expectation of privacy in his computer in light of the parole agreement.").

Here, Barron, Gustafson, and Hampton—each of whom committed his sex offense after June 1, 2009—were convicted and sentenced at a time when Illinois law subjected them to a condition allowing parole agents to conduct "periodic unannounced examinations" of their computers and other internet-capable devices.

11

*See* 730 Ill. Comp. Stat. Ann. 5/3-3-7(b)(7.6)(ii); 3d Am. Compl. ¶¶ 22, 54, 65. Plaintiffs' suggestion that this language does not unambiguously provide for suspicionless searches is meritless. Nothing in it indicates that such searches require any degree of suspicion; to the contrary, the notion of "periodic" searches implies that they occur regularly, regardless of whether individualized suspicion exists, while that of "unannounced" searches implies that they may happen at any time.

Furthermore, Plaintiffs' position that the statutory condition does not contemplate searches of emails or text messages is belied by its reference to "*all data* from the computer or device and any internal or external peripherals." *See* 730 Ill. Comp. Stat. Ann. 5/3-3-7(b)(7.6)(ii) (emphasis added). And to the extent Plaintiffs challenge the Internet Use Policy's internet-monitoring condition, that, too, is plainly covered by subsection 5/3-3-7(b)(7.6)(iii). As a result, the Court concludes that neither Barron, Gustafson, or Hampton has an expectation of privacy in their computers or other internet-capable devices "that society would recognize as legitimate," which is fatal to their Fourth Amendment claims. *See Samson*, 547 U.S. at 852.

The same cannot be said, however, for Tucker and Kramer. As noted above, these Plaintiffs committed their sex offenses before June 1, 2009. 3d Am. Compl. ¶¶ 35, 44. As a result, subsection 5/3-3-7(b)(7.6) does not, in and of itself, erase their reasonable expectations of privacy in their computers and other internet-capable devices. And while it is possible that they nonetheless signed parole agreements clearly providing for suspicionless searches of their digital data, or were otherwise subject to a similar condition under a prior version of subsection 5/3-3-7(b)(7.6), the

12

complaint does not allege either scenario. As a result, their Fourth Amendment claims require the Court to engage in a balancing test that weighs their privacy interests against IDOC's legitimate governmental interests, *see Samson*, 547 U.S. at 848, which the Court is ill-equipped to do on the limited record before it.

Accordingly, Defendants' motion to dismiss Count IV is granted as to Barron, Gustafson, and Hampton, but denied as to Tucker and Kramer.

### E. Whether Plaintiffs State a § 1983 Claim Against Dixon

Finally, Defendants contend that Plaintiffs' § 1983 claims must be dismissed as to Deputy Chief Dixon, because Plaintiffs fail to allege that he was personally involved in their constitutional deprivations. *Cf. Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997) ("We reiterate that personal involvement is a prerequisite for individual liability in a § 1983 action."). In Defendants' view, the allegation that Dixon "was the primary drafter of IDOC's Internet policies" is not enough to establish personal involvement. *See* 3d Am. Compl. ¶ 9.

This is incorrect. A showing of personal involvement requires only "a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017). "[D]irect participation" is not necessary; rather, it is enough that the official "acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003); *see also Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) ("To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." (cleaned up)).

Consistent with this, the Seventh Circuit has found that officials "responsible" for an unconstitutional policy are "answerable" for it under § 1983. *See Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984); *see also Hinojosa v. Livingston*, 807 F.3d 657, 668 (5th Cir. 2015) (finding allegations that defendants "promulgated and had the power to change" the challenged policies established personal liability); *Prison Legal News v. Babeu*, 933 F. Supp. 2d 1188, 1211 (D. Ariz. 2013) ("[A] jury could conclude that [defendant] drafted the . . . policy and therefore was personally involved in the constitutional deprivation."); *Craft v. Cty. of San Bernardino*, No. EDCV 05-359, 2006 WL 4941829, at *2 (C.D. Cal. Mar. 23, 2006) ("[T]he official must have been responsible for developing and promulgating the policies in question." (cleaned up)); *cf. Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998) ("If the supervisor personally devised a . . . policy that caused a constitutional injury, then individual liability might flow from that act.").

Applying these principles here, the Court finds that Plaintiffs have sufficiently alleged Dixon's personal involvement. According to Plaintiffs, Dixon not only was the primary drafter of the current and prior versions of the Internet Use Policy, but also knew that the policy was unconstitutional as early as 2017. 3d Am. Compl. ¶¶ 9, 21. Taken as true for now, this is enough to withstand dismissal under Rule 12(b)(6). Accordingly, Defendants' motion to dismiss the claim against Dixon is denied.

## IV. Conclusion

For the reasons set forth above, Defendants' motion to dismiss the third amended complaint is granted in part and denied in part. Counts III is dismissed in full, while Count IV is dismissed as to Plaintiffs Barron, Gustafson, and Hampton. Because the Court finds that amendment would be futile, these dismissals are with prejudice. In all other respects, the motion is denied.

**IT IS SO ORDERED.**  ENTERED: 9/28/21

_____

**John Z. Lee**
**United States District Judge**